O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| Penny Rice,<br><br>           Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>           Defendant. | Case No. EDCV 09-1681-MLG<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Penny Rice seeks judicial review of the Social Security Commissioner's denial of her application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income benefits("SSI") pursuant to Titles II and XVI of the Social Security Act. For the reasons stated below, the decision of the Commissioner is reversed, and the matter is remanded for an award of benefits.

I.   **Facts and Procedural Background**

Plaintiff was born on October 7, 1953. She has a high school education and has worked as an apartment manager, waitress, police officer, investigator, truck driver, and bookkeeper.

1

(Administrative Record ("AR") at 99-105.) Plaintiff filed an application for SSDI and SSI benefits on May 24, 2006, alleging disability as of January 1, 2005, due to Post Traumatic Stress Disorder ("PTSD") and depression. (AR at 88, 104.) Her application was denied initially and upon reconsideration. (AR at 49, 60.) An administrative hearing was held on January 23, 2009, before Administrative Law Judge ("ALJ") Thomas J. Gaye. (AR at 22-45.) Plaintiff was represented by counsel and testified on her own behalf. A medical expert, Dr. David Glassmire, and a vocational expert ("VE"), Troy Scott, also testified at the hearing. (*Id.*)

ALJ Gaye issued an unfavorable decision on February 24, 2009. (AR at 10-18.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2005, and met the insured status requirements of the Social Security Act through June 30, 2006. (AR at 12.) Plaintiff's severe impairments were found to include major depressive disorder and attention deficit hyperactivity disorder ("ADHD"). These severe impairments, alone or in combination, did not meet the requirements of a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 12-13.) The ALJ concluded that Plaintiff could not return to her past relevant work, but she maintained the residual functional capacity ("RFC") to perform work at all exertional levels with the following nonexertional limitations: "simple, repetitive tasks with no public contact, occasional non-intense contact with coworkers and supervisors, and no hyper vigilance." (AR at 14-17.) Finally, the ALJ determined that Plaintiff was not disabled because there were a significant number of jobs in the national and local economy that Plaintiff could

perform based on the testimony of the VE. (AR at 17-18.)

The Appeals Council denied review on June 9, 2009. (AR at 3-5.) After being granted an extension of time to file a civil action, Plaintiff commenced this action on September 14, 2009. Plaintiff contends that the ALJ (1) failed to properly consider the opinion of Dr. Michael Drennan, a treating psychiatrist; (2) failed to properly consider the opinion of Dr. Romualdo Rodriguez, a treating psychiatrist; (3) improperly disregarded without comment lay witness evidence; (4) improperly discredited Plaintiff's subjective symptom testimony; and (5) failed to pose a complete hypothetical to the VE. (Joint Stip. at 2-3.)

II. **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720

(9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

### III. **The ALJ Improperly Rejected the Opinions of Plaintiff's Treating Psychiatrists**

Plaintiff contends that the ALJ improperly rejected the opinions of her treating psychiatrists, Michael Drennan, M.D., and Romualdo Rodriguez, M.D. (Joint Stip. at 2-3.) In particular, Plaintiff takes issue with the ALJ's rejection of Dr. Drennan's opinion in a February 5, 2007, Narrative Report and Dr. Rodriguez's Evaluation of Mental Disorders from January 5, 2009. Drs. Drennan and Rodriguez completed these respective reports after having treated Plaintiff for at least one year.

#### A. **Psychiatric Treatment by Dr. Drennan**

Dr. Drennan treated Plaintiff at the Riverside County Department of Mental health for two years, with monthly or bimonthly appointments from June 23, 2005 through June 29, 2007. (AR at 229-40.) This treatment relationship began after Plaintiff's husband and daughter brought her to the Riverside Mental Health Clinic for an assessment of her alcohol intake on June 10, 2005.[1] After an initial assessment, Plaintiff was referred for psychiatric treatment with Dr. Drennan. (AR at 243-46.)

---

[1] At the time, Plaintiff was drinking five to six beers daily. By all accounts, Plaintiff stopped drinking after the June 10, 2005, "intervention" by her family. Substance abuse was not a factor in the ALJ's decision.

4

Treatment notes from Plaintiff's first appointment indicate that she previously suffered from depression but had been off of antidepressants since October, 2004. She reported feeling depressed daily, had difficulty with concentration and sleep, and had suicidal ideation with no intent or plan to carry it out. Dr. Drennan noted that Plaintiff was alert and oriented, but was "depressed/restricted, [and] somewhat tearful." He diagnosed Plaintiff with major depression, moderate and recurrent, and prescribed an antidepressant (Fluxetine). (AR at 240.) During her August and November, 2005, appointments, Plaintiff reported moderate improvements in panic and mood, but that sleep was worse with medication. In August, Dr. Drennan increased her dosage of Fluxetine, and in November, he prescribed Trazodone in addition to Fluxetine. (AR at 238.)

Dr. Drennan saw Plaintiff five times between January and May, 2006. In January, he noted that Plaintiff was "calm, cooperative, and much better," but that Plaintiff's sleep was not improving and she reported that the depression was "usually there." Dr. Drennan increased Plaintiff's dose of Fluxetine in January, and increased her dose of Trazodone twice in March. Dr. Drennan noted Plaintiff was "still depressed" in April and May, and added Bupropion (Wellbutrin) to Plaintiff's list of medications. (AR at 235-37.)

Between June and November, 2006, Dr. Drennan noted some improvements and some setbacks. For example, in June and July, Plaintiff "look[ed] a bit better," but in November, Plaintiff was again experiencing suicidal ideation. (AR at 233-35.) During this period, Dr. Drennan increased Plaintiff's daily dosage of all three prescribed medications (Fluxetine, Trazodone, and Bupropion). In

5

January, 2007, Dr. Drennan opined that Plaintiff was "a bit less depressed," but decided to replace Plaintiff's Fluxetine prescription with Lexapro. (AR at 232.)

On February 5, 2007, Dr. Drennan completed a "Riverside County Mental Health Narrative Report (Adult)."[2] (AR at 197.) Dr. Drennan noted that Plaintiff had disorganized thought, mildly impaired memory, severely impaired judgment, and no psychotic symptoms. He found "evidence of" confusion, insomnia, depression, anxiety, decreased energy, and isolation, but no evidence of phobias, panic episodes, manic syndrome, suicidal/homicidal ideation, or inappropriate affect. (*Id.*) Plaintiff was socially withdrawn and guarded. In response to questionnaire prompts, Dr. Drennan concluded that Plaintiff was not capable of maintaining a sustained level of concentration, sustaining repetitive tasks for an extended period, adapting to new or stressful situations, managing her own funds in her best interest, or completing a 40 hour work week without decompensating. (*Id.*)

On February 26, 2007, Dr. Drennan's assessment was that Plaintiff was "more depressed," and in April, he decided to take her off of Lexapro and switch back to Fluxetine. (AR at 231.) After several more increases and changes to Plaintiff's medication for depression between April and June, Plaintiff stopped seeing Dr. Drennan and began seeing Dr. Ali R. Dia.[3] (AR at 225-25, 229-30.)

---

[2] As discussed in detail, below, the ALJ rejected this report because the signature was illegible. When viewed in context of the entire record, there is no doubt the signature on the form is Dr. Drennan's.

[3] Dr. Dia saw Plaintiff twice between June and October, 2007. At the end of October, Plaintiff began treatment with Dr.

The reason for the change from Dr. Drennan to Dr. Dia is not clear from the record.

The ALJ summarized the two year treatment relationship between Plaintiff and Dr. Drennan as follows:

> "Mental health treatment notes dates June 15, 2006[4] through September 14, 2007 showed essentially normal mental status examinations and the claimant reporting improvements in her condition. She was noted to look more alert and less depressed. She also reported sleeping better. The treater noted that subjectively she reported no change in her condition, however, she was observed to have improved appearance, she was alert, and oriented times 3."

(AR at 16.)

**B.   Psychiatric Treatment by Dr. Rodriguez[5]**

In October, 2007, Plaintiff began treatment with Dr. Rodriguez at Anka Behavioral Health, Inc., a Riverside County Mental Health program for "high frequency users of the system or claimants who [are] considered difficult to treat." Dr. Rodriguez saw Plaintiff monthly from that time until at least April, 2009. (AR at 175.) Dr. Rodriguez.

---

[4] It is unclear to the Court why the ALJ ignored without comment the treatment notes during the first year of treatment.

[5] Dr. Rodriguez evaluated Plaintiff in two different capacities during the pendency of Plaintiff's application for Social Security benefits. Prior to beginning a treatment relationship with Plaintiff in October, 2007, Dr. Rodriguez completed two consultative examinations at the request of the Social Security Administration, which will be discussed, *infra*. (*See* AR at 198-211.)

7

Rodriguez's treatment notes are largely similar to those of Dr. Drennan: a diagnosis of major depressive disorder with intermittent moderate improvements and setbacks.

Between November, 2007, and February, 2008, Dr. Rodriguez found Plaintiff's appearance, orientation, mood, concentration, and speech within normal limits. Plaintiff's affect during this time fluctuated between being normal and "flat." Her memory was intact, but her intelligence was average, her judgment limited, and her insight fair. She had no delusions or hallucinations, but she consistently had suicidal thoughts with no plans to carry them out. (AR at 257-63.) Plaintiff's medical compliance was good, based on a "pill count." Dr. Rodriguez increased the dosage of certain prescriptions during this time period and added Concerta to her list of medications. (AR at 262-63, 270.)

From March through June, 2008, Dr. Rodriguez's treatment notes indicate Plaintiff's appetite had decreased and she was suffering from nightmares related to her previous job as a police officer assigned to child abuse cases. (AR at 255-58.) In July, 2008, Plaintiff's suicidal thoughts continued, but her plans were "vague." (AR at 254.) In September, 2008, Dr. Rodriguez added PTSD and ADHD to Plaintiff's diagnoses and noted she was "overall stable – doing well." (AR at 250.) In November, Plaintiff's appearance, mood, affect, attention, and speech were "appropriate," and she was stable. (AR at 247-48.) In December, she was "symptomatic but stable," with suicidal ideation but no plan. Her mood was anxious and depressed and her affect was flat, but her appearance, concentration, and speech were appropriate. (*Id.*) During this period, Dr. Rodriguez continued to adjust Plaintiff's medications.

(AR at 270.)

On January 5, 2009, Dr. Rodriguez completed an "Evaluation of Mental Disorders" form related to Plaintiff's pending Social Security application. (AR at 310-13.) He opined that Plaintiff suffers from "severe depression and daily suicidal ideation," with feelings of hopelessness, helplessness, anxiety, guilt, and worthlessness. Dr. Rodriguez explained that Plaintiff's fear of family consequences prevents her from committing suicide: "I won't kill myself because of what it would do to my family." (AR at 310-11.) Dr. Rodriguez stated that Plaintiff presents as fearful and with uncontrollable crying, confusion, and poor short term memory recall. He noted: "[Plaintiff is] [c]urrently taking maximum doses of stimulant medication and wellbutrin without therapeutic effect. To date no medications have been effective and depression continues to get worse." (*Id.*)

Dr. Rodriguez further described Plaintiff's inability to drive due to agitation and noted her poor general appearance and indifference to hygeine and weight gain. He explained that her anxiety was related to PTSD, nightmares, and flashbacks as a result of traumatic experiences witnessing "several brutally murdered children" while working as a police officer. Regarding functional limitations, Dr. Rodriguez opined that Plaintiff was markedly limited in daily activities and extremely limited in social functioning, concentration, and task completion. (AR at 310-12.)

The ALJ summarized the treatment history between Plaintiff and Dr. Rodriguez as follows: "Behavioral health progress notes dated November 29, 2007 through November 20, 2008 repeatedly revealed mental status examinations within normal limits. She was noted to

be compliant with medications with no side effects reported. Also she was noted to have good program participation." (AR at 16.)

### C. Other Medical Opinions

Plaintiff underwent two consultative psychiatric examinations during the pendency of her application, both performed by Dr. Rodriguez prior to his employment at Anka Behavioral Health. The first consultative examination occurred on August 16, 2006, prior to the initial denial of Plaintiff's application. (AR at 49-56, 205-11.) However, the examination was based on a different claimant's medical records and, on that basis, the SSA reviewing physician who evaluated the application at the reconsideration stage disregarded it. (AR at 214.) The ALJ did not discuss Dr. Rodriguez's August 16, 2006, consultative examination in his unfavorable decision.

On March 26, 2007, Dr. Rodriguez completed a second consultative examination, this time with "no psychiatric records for review." (AR at 198-204.) Plaintiff complained of "depression, sadness, irritability, sleep and appetite disturbances, reaching the point of not wanted to live anymore, having no interest in activities, no energy, and poor concentration." (AR at 199.) Upon examination of Plaintiff's pill bottles, Dr. Rodriguez concluded that Plaintiff was not taking her antidepressants as prescribed. Dr. Rodriguez stated that Plaintiff was dressed appropriately, made eye contact, and was generally cooperative. She was able to volunteer information and appeared "genuine and truthful" with no evidence of exaggeration or manipulation. Plaintiff's thought process was coherent and organized, her affect was "polite, serious, and relaxed," and she was not tearful. Speech, memory, and

1  intellectual functioning were normal. (AR at 201-02.) Dr. Rodriguez
2  diagnosed Plaintiff with dysthimic disorder and concluded that she
3  could "easily recover" from depression within 12 months if she
4  cooperated with treatment. He opined that she had no psychiatric
5  functional limitations. (AR at 202-03.)
6      Dr. David Glassmire testified as a non-examining medical
7  expert at Plaintiff's administrative hearing on January 23, 2009.
8  Based upon a review of Plaintiff's records, Dr. Glassmire opined
9  that Plaintiff has major depressive disorder and ADHD, but she
10 retained the ability to perform simple, repetitive tasks with no
11 public contact, occasional, non-intense contact with co-workers and
12 supervisors, and no hyper vigilance. (AR at 31-32.) Dr. Glassmire
13 disagreed with Dr. Rodriguez's opinion that Plaintiff had marked or
14 extreme functional limitations, finding that the psychiatric
15 evidence supported only moderate limitations. Dr. Glassmire also
16 testified that the consistent adjustments to Plaintiff's
17 medications indicate that Plaintiff had not yet received the
18 "maximum benefit on the medications," but did not suggest anything
19 about the presence of functional limitations. (AR at 33-34.)
20 **D.  Analysis**
21     The ALJ rejected the opinion of Dr. Drennan in the February 5,
22 2007, Narrative Report as well as the opinion of Dr. Rodriguez in
23 the January 9, 2009, Evaluation of Mental Disorders. (AR at 15-16.)
24 As a result, Dr. Glassmire's medical expert testimony was "a major
25 factor in the decision." (AR at 14.) Plaintiff contends that the
26 ALJ's rejection of her treating physicians' opinions was error. The
27 Court agrees with Plaintiff.
28     In evaluating medical opinions, the case law and regulations

distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician has a "greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is uncontroverted, it may be rejected only for clear and convincing reasons. *Reddick*, 157 F.3d at 725; *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If it is contradicted by the opinion of another doctor, the treating physician's opinion may only be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Reddick*, 157 at 725. Here, the opinions of Drs. Drennan and Rodriguez regarding Plaintiff's symptoms and limitations were contradicted by Dr. Glassmire's opinion, and the ALJ could reject them only by providing specific and legitimate reasons that are supported by substantial evidence in the record.

The ALJ rejected Dr. Drennan's February 5, 2007, Narrative Report because it was "not established" that the report came from a treating physician and the opinion was "not accompanied by or supported by any treatment records." (AR at 15.) Both of these reasons are based on the ALJ's failure to decipher Dr. Drennan's signature at the bottom of the Narrative Report. In summarizing the Report, the ALJ noted that the signature on the report was

12

"illegible." (*Id.*) Contributing to the problem of identifying the Report's source was the fact that the Report was included as a separate exhibit in Plaintiff's file rather than being included with the rest of Dr. Drennan's treatment notes. (*See* AR at 197, 218-46.)

Nonetheless, even a cursory inquiry into the record would have alerted the ALJ to the fact that Dr. Drennan filled out the Report; the Report was clearly provided by a doctor at Riverside County Mental Health who began treating Plaintiff in June, 2005, and who had last seen Plaintiff on January 12, 2007. (AR at 197). Dr. Drennan was Plaintiff's only physician at Riverside County Mental Health during the period cited on the report, and a quick review of Plaintiff's treatment records demonstrates that Dr. Drennan did indeed see Plaintiff on January 12, 2005. (AR at 232.) The first name of the signature is clearly "Michael" and the first letter of the last name is clearly a "D", just like Dr. Drennan's. Moreover, although an ALJ is not required to be a handwriting expert, even a casual comparison between the signature at the bottom of the Narrative Report and Dr. Drennan's signature at the bottom of his numerous psychiatric treatment notes would have resolved any ambiguity regarding the source of the Narrative Report.

The ALJ should have made these simple, undemanding inquiries. His failure to do so resulted in rejection of the February 5 Narrative Report without substantial evidence. The record as a whole does not support the ALJ's conclusion that the February 5, 2007 Narrative Report was completed by a non-treating doctor who did not provide supporting treatment notes. *See Tonapetyan*, 242 F.3d at 1148; *Reddick*, 157 at 725. In other words, while an ALJ

would be free to reject the opinion of a non-treating physician with no supporting medical records, a "reasonable mind" considering the record in this case could not conclude that the February 5, 2007, Narrative Report constituted such an opinion. *Parra*, 481 F.3d at 746. Moreover, the Court's review is confined to the reasons supplied by the ALJ, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)), and the Court cannot speculate about other reasons the ALJ might have supplied for rejecting Dr. Drennan's opinion. Accordingly, the ALJ erred when he rejected Dr. Drennan's February 5 opinion without providing specific and legitimate reasons supported by substantial evidence in the record.

The ALJ also rejected Dr. Rodriguez's January 9, 2009, Evaluation of Mental Disorders, in which Dr. Rodriguez explained Plaintiff's diagnosis and symptoms in detail and opined that Plaintiff had marked limitations in daily activities and extreme limitations in social functioning and concentration and task completion. The ALJ provided two reasons for rejecting Dr. Rodriguez's opinion: (1) Dr. Glassmire, the non-examining medical expert, concluded that the Dr. Rodriguez's January 9 opinion was inconsistent with treatment records; and (2) Dr. Rodriguez's opinion as Plaintiff's treating physician was not consistent with his previous opinion as a consultative examiner. (AR at 16.) The Court will consider each reason in turn.

"[A] nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of the treating doctor's [] opinion." *Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1202 (quoting *Lester*, 81 F.3d at 833). Here, the

14

non-examining medical expert testified he disagreed with Dr. Rodriguez's opinion of Plaintiff's limitation because he did not think the limitations were supported by the treatment record. (AR at 33.) The medical expert's testimony was conclusory. He did not explain how or why Dr. Rodriguez's opinion was inconsistent with the treatment records. (*Id.*) The ALJ, in turn, simply adopted the medical expert's opinion without explaining what inconsistencies existed or why he found Dr. Glassmire's conclusion regarding inconsistencies to be an accurate description of the medical evidence. (*See* AR at 16 ("The opinion of Dr. Rodriguez is rejected by the [sic] Dr. Glassmire, the impartial medical expert, because it inconsistent [sic] with treatment records as Exhibit 6F and 7F [sic]").) This was error.

In order to meet the specificity requirement for rejecting a treating doctor's opinion in favor of another doctor's opinion, an ALJ must set out a "detailed and thorough summary of the facts and conflicting evidence, stat[e] his interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725 (citing *Magallanes*, 881 F.2d at 751.); *see also, Embrey*, 849 F.2d at 421-22 ("To say that medical opinions are not supported by sufficient objective findings ... does not achieve the level of specificity our prior cases have required...The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). The ALJ failed to meet this standard because ALJ's summary[6] of Dr. Rodriguez's treatment notes is

---

[6] The ALJ summarized the notes as follows: "Behavioral health progress notes dated November 29, 2007, through November 20, 2008, repeatedly revealed mental status examinations within normal

15

neither detailed nor thorough, and it does not present a fair reading of the treatment records. Instead, the ALJ impermissibly cherry-picked only the parts of Dr. Rodriguez's notes supporting the ALJ's conclusion in the summary of Plaintiff's treatment and ignored, for example, the notes regarding Plaintiff's suicidal ideation, her lack of response to medication, and the continued presence of symptoms. *See Reddick*, 157 F.3d at 722-23; *accord Campbell v. Astrue*, 2009 WL 3244745, at *5 (C.D. Cal. Oct. 7, 2009) (an ALJ "may not point to only those portions of the record that boslter his findings"). Ultimately, the ALJ erred by presenting an incomplete and lopsided summary of Plaintiff's treatment records, and then finding Dr. Rodriguez's opinion "inconsistent" with that lopsided summary.

The ALJ's second reason for rejecting Dr. Rodriguez's January, 2009, Evaluation of Mental Disorders was that it conflicted with the opinion Dr. Rodriguez rendered in 2007 as a consultative examining physician.[7] However, in citing this as a reason for rejecting Dr. Rodriguez's opinion as a treating doctor, the ALJ did nothing more than point out that the opinions were different. (AR at 15-16.) The ALJ erred by failing to explain his interpretation

---

limits. She was noted to be complian with medications with no side effects reported. Also she was noted to have good program participation."

[7] The Court notes that Dr. Rodriguez submitted a letter to the Appeals Council on April 21, 2009, explaining the differences between his opinion rendered as an examining physician and his opinion rendered after establishing a treatment relationship. (AR at 175-76.) This letter was not part of the record until after the ALJ issued his unfavorable decision and was not considered by the ALJ. Although illuminating, the letter is not necessary to the Court's analysis.

16

of the inconsistencies and failing to provide reasons for finding the consultative report more reliable than Dr. Rodriguez's January, 2009, opinion. *Reddick*, 157 F.3d at 725. Simply identifying a difference between a doctor's opinion after one appointment and the same doctor's opinion after a lengthy course of treatment is not a specific or legitimate reason for rejecting the treating doctor's ultimate opinion. Instead, identification of significant conflicts in the opinions is what makes it permissible for the ALJ to reject a treating doctor's opinion. *See Lester*, 81 F.3d at 830-31. Accordingly, the recitation of Dr. Rodriguez's first report, in his capacity as a consultative doctor, in and of itself, does not constitute a specific or legitimate reason for rejecting Dr. Rodriguez's subsequent opinion that was rendered after becoming Plaintiff's treating physician.

For the foregoing reasons, the ALJ improperly rejected the opinions of Drs. Drennan and Rodriguez, and those opinions must be credited as a matter of law. *Lester*, 81 F.3d at 834 (citing *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).

## IV. <u>Award of Benefits</u>

Upon determining that the Commissioner erred in denying benefits, the Court may remand the case for further proceedings or award benefits. An award of benefits is appropriate where (1) the ALJ improperly rejected relevant evidence in the record; (2) no outstanding issues prevent a disability determination from being made; and (3) the ALJ would be required to award benefits if the improperly rejected evidence were credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)(citations omitted); *see also*

*Lingenfelter,* 504 F.3d at 1041 (citing *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1998)).

Here, the ALJ improperly rejected the opinions of Drs. Drennan and Rodriguez regarding Plaintiff's functional limitations. And, as demonstrated by Vocational Expert's hearing testimony, (AR at 43-45), if even one of the improperly rejected opinions were credited as true, Plaintiff would be considered disabled under the Social Security Act. There being no outstanding issues to resolve through further administrative proceedings, an award of benefits is appropriate.

**V.  Conclusion**

For the reasons stated above, the decision of the Commissioner is reversed and the matter is remanded for an award of benefits.

Dated:   March 5, 2010

_____
Marc L. Goldman
United States Magistrate Judge